UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NICOLA A. MCFARLANE,

                         *Plaintiff,*

     – against –

COMMUNITY HEALTH CENTER
OF RICHMOND, INC.,

                         *Defendant.*

---

**MEMORANDUM & ORDER**
25-cv-00410 (NCM) (RML)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Nicola A. McFarlane brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. State Exec. L. § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1) *et seq.*, against defendant Community Health Center of Richmond, Inc. ("CHCR"), for alleged discrimination and retaliation in connection with plaintiff's employment and eventual termination. *See* Compl., ECF No. 1. Before the Court is defendant's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).[1] For the reasons stated below, defendant's motion is **GRANTED in part, DENIED in part.**

---

[1]    The Court hereinafter refers to defendant's Memorandum of Law in Support of its Motion to Dismiss, ECF No. 12-1, as the "Motion"; plaintiff's Memorandum of Law in Support of her Response in Opposition to the Motion, ECF No. 12-4, as the "Opposition"; and defendant's Reply Memorandum of Law in Further Support of its Motion, ECF No. 12-5, as the "Reply."

## BACKGROUND

Plaintiff is a Black woman who was employed by defendant as a certified medical assistant beginning in October 2016. Compl. ¶¶ 9, 15, 17. As part of her job responsibilities, plaintiff was tasked with "triaging patients, taking their vital signs, performing EKGs, administering blood work, and ensuring that the medical rooms were stocked with needed supplies." Compl. ¶ 16.[2] Plaintiff had two supervisors during her tenure with CHCR: Monique Welbeck and Brianna Torino. Compl. ¶ 18. Prior to May 2022, plaintiff was "known to be hardworking, always on time . . . ., and [for] very rarely missing work." Compl. ¶ 19.

Plaintiff alleges that she first began experiencing racial discrimination at her job in May 2022, "which persisted until [p]laintiff was terminated by [d]efendant" on January 2, 2024. Compl. ¶¶ 17, 20. Specifically, on May 13, 2022, two other CHCR medical assistants—Cecilia Flores and Dionisia Neri—"each grabbed one of [p]laintiff's arms , and began pulling [p]laintiff away to give [p]laintiff instructions about what she would be doing that day." Compl. ¶¶ 20, 24. The interaction escalated such that Flores and Neri "began shouting at [p]laintiff in the hallway to the point that management had to intervene." Compl. ¶ 24. Plaintiff and Flores were called into a meeting with Torino and Dr. Rosario, a "[d]irector" at CHCR. Compl. ¶ 25. During this meeting plaintiff expressed her belief that Flores treated her unfairly "and complained that Cecilia Flore[s] is racist." Compl. ¶ 25. Plaintiff specifically pointed out that Flores treated her differently than her co-workers, and that Flores "did not speak to non-Black employees with the same hostility" with which Flores spoke to Black employees. Compl. ¶ 25.

---

[2]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Flores interjected at that point, "telling [p]laintiff, 'Don't say again I'm a racist.'" Compl. ¶ 25. Immediately thereafter Flores "repeatedly called [p]laintiff a 'negro.'" Compl. ¶ 25. Although Torino told Flores she "should not use that word," neither Torino nor any other CHCR managerial employee took action against Flores. Compl. ¶ 25. Plaintiff made verbal and written reports about Flores's conduct to plaintiff's other supervisor, Welbeck, as well as to CHCR's human resources ("HR") department. Compl. ¶ 26. Plaintiff also reported other "hostile behavior" she was subjected to from other CHCR employees. Compl. ¶ 26.

In the ensuing weeks, Flores continued to harrass plaintiff. Specifically, Flores "repeatedly called [p]laintiff Sharina, referring to another Black employee" at CHCR. Compl. ¶ 27. Plaintiff made at least three more complaints about Flores's behavior to supervisors and management. *See* Compl. ¶ 28. Despite plaintiff's complaints, defendant took no action until October 28, 2022—five months after Flores's "negro" comments— when plaintiff had a meeting with Melbeck. Compl. ¶ 30. At that meeting plaintiff was informed that Flores's comments "were a Spanish word" and "not intentional." Compl. ¶ 32. Defendant did not otherwise take any action related to plaintiff's complaints. *See* Compl. ¶ 31.

In the following months plaintiff was subjected to what she alleges to be a "manufacture[d] . . . record of discipline" for the purpose of defendant "tak[ing] a pretextual adverse employment action against her[.]" Compl. ¶ 33. For instance, defendant issued several disciplinary write-ups for tasks that plaintiff "completed but was accused of not completing." Compl. ¶ 33. Plaintiff also had negative notes placed in her employment file. Compl. ¶ 33. And, in August 2023, Flores "told a patient to report

3

[p]laintiff for allegedly not providing discharge instructions and gave the patient the number to the main office for [d]efendant[.]" Compl. ¶ 33.

These events culminated on December 8, 2023, when plaintiff was instructed by a member of defendant's HR department to "stay home." Compl. ¶ 34. Plaintiff was not permitted to return to work. Compl. ¶ 34. Then, on January 2, 2024, plaintiff received a termination letter from CHCR. Compl. ¶ 35. The letter stated that plaintiff was fired for "not meeting performance expectations," "excessive absenteeism," and for engaging in unspecified "unprofessional and confrontational behavior towards department supervisors[.]" Compl. ¶ 35. Plaintiff alleges that she's suffered from a host of physical, mental, and psychological ailments stemming from the stress caused by defendant's conduct. Compl. ¶¶ 37–39. Plaintiff also alleges "loss of income, benefits, and other compensation[.]" Compl. ¶ 40.

On September 30, 2024, plaintiff filed a charge of race discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"). Compl. ¶ 5; *see also* Decl. of Jordan E. Pace Ex. A ("EEOC Charge"),[3] ECF No. 12-3. Approximately one month later plaintiff received a right to sue letter from the EEOC after the agency declined to proceed with its investigation. Compl. ¶ 6; Compl. Ex. A, ECF No. 1-1. Plaintiff commenced the instant action on January 23, 2025.

---

[3]    In considering the motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, the "issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings discrimination and retaliation claims under each of Title VII, the NYSHRL, and the NYCHRL. Defendant raises three arguments in support of dismissal. First, plaintiff's Title VII discrimination claim is time-barred by the statute of limitations.

Mot. 10–12.[4] Second, plaintiff's Title VII retaliation claim should be dismissed "[g]iven the absence of any non-conclusory allegations of causation or retaliatory intent[.]" Mot. 12–14. Third, after dismissing plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss the complaint for lack of jurisdiction. Mot. 6, 14–15. The Court addresses each argument in turn.

## I.    Title VII Discrimination

Plaintiff's Title VII discrimination claim is premised on a hostile work environment that began with "Flores'[s] repeated use of the word negro and intentionally calling [p]laintiff by another [B]lack employee's name (even though she knew [p]laintiff's correct name)." Opp'n 9. To sustain a hostile work environment claim under Title VII, plaintiff must plausibly allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015); *see also Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001). This inquiry "involves both objective and subjective elements." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). As to the objective element, plaintiff must plausibly allege that her injuries arose from conduct "that is objectively severe or pervasive—that is, if it create[d] an environment that a reasonable person would find hostile or abusive[.]" *Gregory*, 243 F.3d at 691. As to the subjective element, plaintiff must plausibly allege that she "subjectively perceive[d]" the conduct as hostile or abusive. *Id.* Additionally, a hostile work environment claim must be supported by allegations

---

[4]    Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

permitting the Court to infer that "the hostile work environment was caused by animus towards [plaintiff] as a result of her membership in a protected class." *Sullivan v. Newburgh Enlarged Sch. Dist.*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003).

"The standard for stating a hostile work environment claim under Title VII is a demanding one." *Moultry v. Rockland Psychiatric Ctr.*, No. 17-cv-04063, 2018 WL 5621485, at *4 (S.D.N.Y. Oct. 30, 2018); *see also Ennis v. Sonitrol Mgmt. Corp.*, No. 02-cv-09070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006) ("Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. They are not intended to promote or enforce civility, gentility[,] or even decency."). Still, "the Second Circuit has repeatedly cautioned against setting the bar too high[.]" *Rodriguez v. Buffalo Mun. Hous. Auth.*, No. 23-cv-00087, 2024 WL 3861247, at *6 (W.D.N.Y. Aug. 19, 2024) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

### A.  Statute of Limitations

Rather than contest the sufficiency of plaintiff's allegations pertaining to her Title VII discrimination claim, defendant instead moves to dismiss the claim on the grounds that it is time-barred by the applicable statute of limitations. *See* Mot. 10–12; Reply 6–8. As a precondition to bringing a Title VII claim in federal court, a plaintiff must exhaust her administrative remedies. *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). In New York, a plaintiff must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 447 (E.D.N.Y. 2018); *see also* 42 U.S.C. § 2000e-5(e)(1). The 300-day statute of limitations "begins to run when the alleged unlawful employment practice occur[red]." *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 89 (2d Cir. 2003). Here, plaintiff filed her EEOC charge on September 30, 2024. *See* EEOC Charge 11. Thus, defendant

argues that "[a]ny allegedly unlawful employment practice occurring more than 300 days before that date—i.e., before December 5, 2023—is time barred." Mot. 10. And according to defendant, because plaintiff's hostile work environment claim is predicated on conduct occurring in May 2022, "[n]one of that conduct can support a Title VII claim." Mot. 10.

Plaintiff acknowledges the 300-day statute of limitations but contends that an exception to that rule applies here: the continuing violation doctrine. Opp'n 10. Pursuant to that doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination," i.e., a continuing violation, "all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Hongyan Lu v. Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (summary order); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). As relevant here, in order to show that a discrete act is part of a continuing violation, the "timely incident must be sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work[ing] environment." *Sanderson v. N.Y. State Elec. & Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014) (summary order).

Although there is no "specific test" to determine whether a discrete act is "sufficiently related" to conduct alleged in support of a hostile work environment claim, courts within the Second Circuit look to: (1) whether the timely and untimely discrimination is of a "similar nature"; (2) whether the same individuals perpetuated the discrimination; (3) the frequency and temporal proximity of the acts; and (4) whether the employer took intervening remedial action. *Kramer v. Bessent*, No. 21-cv-03295, 2025 WL 2576482, at *12 (E.D.N.Y. Sept. 4, 2025); *see also Perez v. City of New York*, No. 23-cv-00447, 2024 WL 898943, at *11 (S.D.N.Y. Feb. 29, 2024) (explaining that the Second

Circuit has "focused on the commonality of the environment in which the incidents took place, the nature of the incidents, and the temporal discontinuity between the incidents to assess whether incidents are sufficiently related so as to be part of the same hostile environment claim") (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 81 (2d Cir. 2010) (Calabresi, J., concurring) (describing opinion of the Court)). Additionally, in order to invoke the continuing violation exception in federal court, a plaintiff must "clearly assert that theory of timeliness both in h[er] EEOC charge and in h[er] complaint." *Sundaram v. Brookhaven Nat'l Lab'ys*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006).

### B.  *Continuing Violation Doctrine*

Plaintiff argues that her termination on January 2, 2024, was "part and parcel" of the "same unlawful and actionable discriminatory practice" that began in May 2022 when Flores first called her a "negro" and intentionally called her by another Black employee's name. Opp'n 12. Thus, in plaintiff's view, her termination was an act in furtherance of defendant's discriminatory policy and therefore renders her hostile work environment claim timely. *See* Opp'n 12. Defendant responds that plaintiff "cannot rely on the continuing violation doctrine to save her untimely claim" for at least three reasons. Mot. 11. First, discrete events such as being placed on leave and then being terminated "cannot anchor any invocation of the continuing violation doctrine." Mot. 12. Second, plaintiff does not allege that her termination "was the result of discriminatory intent." Mot. 10 n.3. Finally, defendant argues that plaintiff failed to clearly assert a continuing violation theory in her EEOC charge. Mot. 11–12.

At the outset, the Court notes that defendant incorrectly argues that plaintiff "cannot anchor any invocation of the continuing violation doctrine" based on a "discrete

event[]" such as plaintiff's termination. Mot. 12. Indeed, the Second Circuit recently held that "[a] discrete discriminatory act, such as termination, within the limitations period may not only support a claim for damages, it may also render a hostile work environment claim timely if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 561 (2d Cir. 2024) (emphasis omitted). The *King* Court explained that although a "timely hostile environment claim cannot make an untimely discrete act actionable," neither the Second Circuit nor the Supreme Court "held that the converse is true." *Id.* at 560. The Court observed that a hostile work environment "is formed and shaped by an assemblage of discriminatory acts—including acts that might also support a discrete-act discrimination claim if timely filed." *Id.* at 561 (emphasis omitted). The court reasoned that "that's true whether the discrete acts that are part of a discriminatory course of conduct occur within the limitations period or without." *Id.* Thus, the Court held that there is no "exception to the continuing violation doctrine for timely [discrete] acts[.]" *Id.*

However, the Second Circuit "emphasized" a "limitation" to its holding:

> The continuing violation doctrine allows a Title VII plaintiff to rely on a discrete act to render a hostile environment claim timely *only* if the plaintiff establishes that the discrete act was part of the ongoing, discriminatory practice that created a hostile work environment. An unrelated discrete act, different in kind from the conduct giving rise to the hostile environment, does not trigger the continuing violation doctrine.

*Id.* (emphasis in original).

It's on the basis of this limitation that plaintiff fails to invoke the continuing violation doctrine for purposes of Title VII. Plaintiff fails to plausibly allege that her termination was part of the same "ongoing, discriminatory practice that created [the]

hostile work environment." *Id.* Plaintiff argues that her hostile work environment claim "began accruing in or about May 2022," Opp'n 12, when she was "treated in a hostile manner due to her race," Compl. ¶ 21. Specifically, the complaint details a series of incidents between plaintiff and certain co-workers that culminated in Flores "repeatedly call[ing] [p]laintiff a negro." Compl. ¶ 25. Put differently, plaintiff alleges a hostile work environment created by a course of mistreatment at the hands of her co-workers based on her race. On the other hand, plaintiff alleges that her termination was motivated by a different reason: retaliation for reporting that discrimination. *See, e.g.*, Compl. ¶ 34 ("Defendant . . . instructed [p]laintiff to stay home in *retaliation* for reporting racial discrimination.") (emphasis added); Compl. ¶ 35 ("Finally, the [termination] letter . . . refer[red] to the fact that [p]laintiff complained of discrimination and was being retaliated against.").

Indeed, as defendant points out, plaintiff does not allege that she was terminated *because* of her race. Mot. 10 n.3; *see generally* Compl. Instead, she alleges that defendant manufactured "pretextual" reasons to "set [p]laintiff up for termination" because of plaintiff's "complaint[s] regarding racial discrimination." Compl. ¶ 36. As set forth more fully below, although these allegations certainly bear on plaintiff's retaliation claims, they do not sufficiently link her termination with the practice underlying her hostile work environment claim. In other words, the complaint's allegations do not give rise to a reasonable inference that plaintiff's termination—allegedly on the basis of engaging in protected activity—is one of the "assemblage of discriminatory acts" which gave shape to her hostile work environment claim arising from discriminatory practices—allegedly on the basis of her race—such that she may present both incidents together as "a single timely [hostile work environment] claim." *Perez*, 2024 WL 898943, at *11; *cf. Troeger v. JetBlue*

*Airways Corp.*, No. 23-cv-10859, 2024 WL 5146185, at \*6 (S.D.N.Y. Dec. 17, 2024) (concluding that discrete acts, including the plaintiff's termination, within the statute of limitations period could support continuing violation theory for hostile work environment claim where the plaintiff "allege[d] that . . . the [termination] decision[] w[a]s motivated by discrimination on the basis of his sexual orientation and atheism," and noting, "[i]mportantly, [the plaintiff] allege[d] that those actions were taken *for the same discriminatory reasons* . . . as were the actions taken before the commencement of the limitations period") (emphasis added).

The factors courts look to in assessing whether incidents "are sufficiently related so as to be part of the same hostile environment claim" also support this conclusion. *Perez*, 2024 WL 898943, at \*11. For one, plaintiff's termination is not an incident of a "similar nature" as the harassment perpetuated against her by Flores beginning in May 2022. *Kramer*, 2025 WL 2576482, at \*12; *accord Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. 06-cv-00672, 2007 WL 121431, at \*5 (E.D.N.Y. Jan. 12, 2007) (explaining that actions that have the "effect of creating a hostile, intimidating and offensive work environment" are different in kind from discrete acts such as termination). Second, plaintiff alleges that different individuals perpetrated the different incidents of timely and untimely discrimination. Plaintiff alleges that "[s]ome of the perpetrators of the racial discrimination"—that are outside the limitations period—include Flores, Neri, and Griselda, nurses and medical assistants who worked at CHCR. Compl. ¶ 20. But plaintiff does not allege that any of the forgoing individuals also "perpetrated" her being placed on leave or terminated—the only alleged timely incidents of discrimination. Indeed, plaintiff alleges that a different individual in a different department, Williar Hodges of CHCR's HR department, effectuated the alleged retaliatory termination. Compl. ¶ 34; *see*

*Garrison v. Am. Sugar Refining, Inc.*, 789 F. Supp. 3d 291, 313 (S.D.N.Y. 2025) (explaining that courts often "find that the continuing violation doctrine does not apply" when alleged harassing comments and actions were taken "by multiple different supervisors or coworkers across separate departments").

The lack of temporal proximity between plaintiff's January 2024 termination and the May 2022 incidents also weighs against concluding that the continuing violation doctrine applies. Although the complaint alleges facts pertaining to potentially retaliatory conduct in the intervening year and a half, *see* Compl. ¶ 33, plaintiff fails to allege facts plausibly supporting "temporal []continuity" between Flores's comments and plaintiff's termination such that the Court could infer the two are "sufficiently related so as to be part of the same hostile environment claim," *McGullam*, 609 F.3d at 81. For instance, aside from being placed on leave, the only incident from 2023 referenced in the complaint is when Flores reported plaintiff for "allegedly not providing discharge instructions" in retaliation "against [p]laintiff for complaining of discrimination." Compl. ¶ 33. While this allegation may bear on Flores's retaliatory behavior, it does not link plaintiff's termination with the alleged hostile work environment such that the Court could infer her termination "was part of the ongoing, discriminatory practice that created a hostile work environment." *King*, 96 F.4th at 561; *see also Williams v. N.Y.C. Dep't of Educ.*, No. 19-cv-01353, 2019 WL 4393546, at *9 (S.D.N.Y. Aug. 28, 2019) ("Incidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related" to invoke the continuing violation doctrine).

Moreover, plaintiff cannot invoke the continuing violation doctrine for another independent reason: she failed to clearly assert that theory in her EEOC charge. *See Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) ("[A] plaintiff may not rely on

a continuing violation theory of timeliness unless she has asserted that theory in the administrative proceedings."); *see also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985). A plaintiff does not need to expressly use the phrase "continuing violation" in an EEOC filing to invoke the doctrine. *Rivera v. Puerto Rican Home Attendants Servs., Inc.*, 930 F. Supp. 124, 131 n.6 (S.D.N.Y. 1996). However, plaintiff was required to "clearly assert that theory of timeliness . . . in h[er] EEOC charge[.]" *Sundaram*, 424 F. Supp. 2d at 560; *see also Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 381 (E.D.N.Y. 2000).

Plaintiff failed to do so here. While her EEOC Charge relays the sequence of events that led up to her termination, it does not clearly assert a continuing violation by way of defendant's policies or practices. *See Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, No. 03-cv-05942, 2004 WL 736988, at *13 (S.D.N.Y. Apr. 6, 2004) (finding that although the plaintiff's EEOC filing provided a "narrative of the underlying events," the continuing violation doctrine could not be invoked because the events were not "clearly asserted as part of a continuing violation"). For instance, although plaintiff's complaint references defendant's "unlawful employment practices," Compl. ¶ 77, and a "*continuous* hostile work environment," Compl. ¶ 1 (emphasis added), similar language is absent from the EEOC Charge. Indeed, the EEOC Charge does not reference defendant's policies, practices, or mechanisms whatsoever. *See Carrasco v. N.Y.C. Off-Track Betting Corp.*, 858 F. Supp. 28, 32 (S.D.N.Y. 1994) ("[U]nless the plaintiff alleges discrimination by virtue of a *specific official policy* or *mechanism*, claims of continuing violation will not lie." (emphasis in original)), *aff'd*, 50 F.3d (2d Cir 1995); *Commodari*, 89 F. Supp. 2d at 381 ("[W]here, as here, [the] plaintiff failed to assert a continuing violation or an ongoing

policy of discrimination in his EEOC charge, he may not rely on the continuing violation exception in a subsequent district court action.").

The closest allegations in the EEOC Charge to arguably asserting a continuing violation theory are plaintiff's references to "endur[ing] a hostile work environment," EEOC Charge ¶ 16, and her experience of "racial discrimination at . . . CHCR in or around May 2022, which persisted" until her termination, EEOC Charge ¶ 6. Even in the light most favorable to plaintiff, these allegations are too conclusory to amount to a *clear* assertion of the continuing violation theory she seeks to assert here: defendant's "practice" of failing to remedy disparate treatment on account of her race. Compl. ¶ 43; *see Barkley v. City of New York*, No. 12-cv-02159, 2014 WL 25270, at *12 (E.D.N.Y. Jan. 2, 2014) (concluding that allegation in EEOC filing "charg[ing] the [defendants] with discrimination based upon their unlawful intentional pattern and practice of race discrimination and retaliation" was conclusory and "insufficient in itself to constitute a clear allegation of a continuing violation"); *Oteri-Harkins v. City of New York*, No. 97-cv-02309, 1998 WL 817689, at *4–5 (E.D.N.Y. Feb. 5, 1998) (reasoning that allegation in EEOC charge "no doubt assert[ed] a course of discriminatory treatment in a three-year period of [the] plaintiff's employment," but nonetheless failed to clearly assert a continuing violation theory because it failed to apprise the EEOC of the specific discriminatory policy that the plaintiff alleged in her complaint). But even more importantly, the EEOC Charge fails to make a clear allegation that the alleged discriminatory termination was part of a continuing violation. *See Barkley*, 2014 WL 25270, at *11–12 (reasoning that an alleged discriminatory hiring and promotion incident, which was not time barred, could not render other time-barred alleged incidents of discrimination and retaliation timely under the continuing violation doctrine because

the "EEOC charges filed by the plaintiffs as the basis of th[e] action did not state that the alleged discriminatory hiring and promotion . . . was part of a continuing violation").

Plaintiff's argument that her termination was "reasonably related" to other complaints about defendant's alleged discriminatory practices is misplaced. *See* Opp'n 9–11. This argument conflates Title VII's exhaustion requirement with the continuing violation exception to Title VII's statute of limitations. As a precondition to bringing a claim under Title VII, a plaintiff must exhaust her administrative remedies through the EEOC. *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Id.* An example of such a situation is if a plaintiff is retaliated against by their employer for filing a discrimination charge with the EEOC. In that instance, the retaliation claim is "reasonably related" to the underlying discrimination charge, and a plaintiff need not file a second EEOC charge about the subsequent retaliation before bringing suit in federal court. *See id.*

The continuing violation doctrine addresses a different problem—a plaintiff may rely on, and recover for, discriminatory acts "in furtherance of an ongoing policy of discrimination," even if such acts would be untimely standing alone, so long as at least one incident in furtherance of that policy is within the statute of limitations. *Hongyan*, 412 F. App'x at 416. In other words, the continuing violation doctrine permits a plaintiff to recover for sufficiently related acts of discrimination, "even if those acts, standing alone, would have been barred by the statute of limitations." *Bampoe v. Coach Stores*, 93 F. Supp. 2d 360, 368 (S.D.N.Y. 2000). Thus, the relevant inquiry for application of the continuing violation doctrine is not whether the timely discrete act is "reasonably related"

16

to other discriminatory acts which were raised—or could have been raised—in an EEOC charge. Rather, courts ask (1) whether the discrete act is "sufficiently related" to otherwise untimely discriminatory acts "so that they can be said to be part of the same hostile work[ing] environment," *Sanderson* 560 F. App'x at 91; and (2) whether the theory of a continuing violation was clearly asserted both in the EEOC filings and complaint, *Bawa v. Brookaven Nat'l Lab'y, Associated Univs., Inc.*, 968 F. Supp. 865, 868 (E.D.N.Y. 1997). And here, plaintiff's allegations fail to raise a reasonable inference that her termination was anything more than "[a]n unrelated discrete act, different in kind from the conduct giving rise to the hostile environment," *King*, 96 F.4th at 561, as well as fail to raise a reasonable inference that she clearly asserted a continuing violation theory in her EEOC charge.[5]

\*       \*       \*

In sum, the Court finds that plaintiff fails to plausibly allege that her termination "was part of the ongoing, discriminatory practice that created a hostile work environment." *Id.* Therefore, because plaintiff's termination fails to trigger the continuing violation doctrine, her allegations concerning the hostile work environment are barred by the statute of limitations and cannot support her Title VII discrimination claim. Accordingly, defendant's motion to dismiss this claim is granted.

---

[5] In light of this conclusion, the Court does not address the parties' arguments concerning the import of plaintiff's failure to check the "Continuing Action" box on the cover sheet of her EEOC charge. Mot. 11–12; Opp'n 12–13; *See Kramer*, 2025 WL 2576482, at \*15 n.13 ("Some courts have held that failure to check a continuing violation box on an EEO complaint, while not determinative, is a factor to consider in determining whether the EEO complaint asserted a continuing violation.").

## II.     Title VII Retaliation

Plaintiff's workplace retaliation claim under Title VII is "reviewed under the burden-shifting approach of *McDonnell Douglas*." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). The first step under *McDonnell Douglas* requires a plaintiff to "establish a *prima facie* case of retaliation," after which the burden shifts to the defendant to "articulate some legitimate, non-retaliatory reason" for the adverse employment action. *Zann Kwan*, 737 F.3d at 844–45. To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) [the plaintiff] engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023).

However, these elements are "relaxed" at the pleading stage. *Littlejohn*, 795 F.3d at 307; *see also Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018). In order to survive a motion to dismiss a retaliation claim, plaintiff must "plausibly allege that: (1) defendant[] discriminated—or took an adverse employment action—against [plaintiff], (2) because [plaintiff] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). To satisfy the requirement that plaintiff engaged in protected activity by opposing an employer's practice, plaintiff need only allege "a good faith, reasonable belief that the underlying employment practice was unlawful," whether or not it actually was unlawful. *Zann Kwan*, 737 F.3d at 843.

To establish causation, a plaintiff must allege that the protected activity was a "but-for" cause of the retaliation. *Vega*, 801 F.3d at 90–91. That is, a plaintiff must allege that "the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91. Causation can be supported at the pleading stage with allegations of (i) "direct evidence of retaliatory animus" or (ii) indirect evidence of causation "through temporal proximity to the protected activity" or "a backdrop of continuing antagonism and frustration of [] professional ambitions." *Duplan*, 888 F.3d at 625–26. Indirect support of causation can be established "by showing that the protected activity was closely followed in time by the adverse employment action." *Tafolla v. Heilig*, 80 F.4th 111, 125–26 (2d Cir. 2023). Although the Second Circuit "has not drawn a bright line defining the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has found that "a period of several months" can still demonstrate a causal connection. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023).

Finally, plaintiff must also allege that she "was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse." *Carr*, 76 F.4th at 180. In the employment context, an action is adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of" unlawful activity, as defined in the underlying statute, against her employer. *Id.* (quoting *Burlington v. N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Whether an employer's action is adverse is often "a heavily fact-specific, contextual determination." *Connelly v. County of Rockland,* 61 F.4th 322, 325 (2d Cir. 2023).

Defendant does not dispute whether plaintiff engaged in protected activity, whether it was aware of that activity, or whether plaintiff's termination was an adverse employment action. Instead, defendant argues that plaintiff's retaliation claim fails for

lack of causation. Specifically, defendant argues that the time that lapsed between plaintiff's alleged protected activity in May 2022 and being put on leave in December 2023, "is far too long to support any inference of retaliatory intent," and that plaintiff fails to point to direct evidence of retaliatory intent. Mot. 12–13. The Court disagrees.

Plaintiff alleges that shortly after the interaction in which "Flores called [p]laintiff a negro," plaintiff reported Flores's conduct to her supervisor and defendant's HR department. Compl. ¶ 26. In the ensuing weeks, after Flores repeatedly referred to plaintiff by the name of another Black employee, plaintiff made at least three complaints to one of defendant's directors about Flores's harassing conduct. Compl. ¶ 28. In total, plaintiff "made at least six (6) complaints regarding racial discrimination" to her supervisor and CHCR's HR department, although nothing was ever done to investigate plaintiff's complaints. Compl. ¶ 30. And, importantly, plaintiff's termination letter stated "that [p]laintiff engaged in unspecified unprofessional and confrontational behavior towards department supervisors." Compl. ¶ 35.

At the pleading stage, these allegations are more than sufficient to support a reasonable inference that plaintiff's termination, for "unprofessional and confrontational behavior towards department supervisors," was caused by her numerous complaints concerning racial discrimination in the workplace, i.e., retaliatory animus. *See e.g.*, *White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 390 (S.D.N.Y. 2011) ("Complaints by an employer about a plaintiff's attitude or demeanor have been considered to be one indicator of retaliatory animus."); *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (concluding that evaluation in the plaintiff's file stating that the plaintiff's "attitude should be taken into account when placing him in any future assignment," months after engaging in protected activity served as direct evidence of retaliatory

animus); *Henderson v. Center for Comm. Alternatives*, 911 F. Supp. 689, 702 (S.D.N.Y. 1996) (concluding that an issue of fact existed as to whether the plaintiff demonstrated the defendant's retaliatory animus based on evidence that the defendant's executive director suggested that the plaintiff should "learn how to present himself better" after the plaintiff objected to one of the defendant's practices that the plaintiff believed to be discriminatory); *accord Suarez v. City of New York*, Nos. 11-cv-05812, 14-cv-05403, 2019 WL 13273450, at *16 (E.D.N.Y. June 10, 2019) ("It has been consistently held that negative reactions by an employer to a plaintiff's complaints of discrimination have been deemed indicative of retaliatory animus.").

For this reason, defendant's insistence that plaintiff cannot establish causation due to the temporal gap between her initial complaints of racial discrimination and her eventual termination is unavailing. *See* Mot. 12–13. Although, in general, a lengthy temporal gap is insufficient on its own to support an inference of causation, such a length of time does not defeat an inference where, as here, plaintiff does not rely only "on temporal proximity as affirmative evidence of causation[,] [but] offers instead direct evidence of retaliatory animus." *Mandell*, 316 F.3d at 384; *see also Williams*, 2019 WL 4393546, at *14 ("[A] mere time-gap, standing alone, is not sufficient to sever the chain of causation."); *Birkholz v. City of New York*, No. 10-cv-04719, 2012 WL 580522, at *10 (E.D.N.Y. Feb. 22, 2012) (reasoning that allegations of retaliatory animus including "an unwarranted letter of insubordination" supported inference of causation even where the adverse action "occurred approximately one year after [the] [p]laintiff objected to . . . discriminatory remarks"); *Patane v. Clark*, 508 F.3d 106, 116–17 (2d Cir. 2007) (finding that one year gap was insufficient to defeat causal connection where the plaintiff provided direct evidence of retaliatory animus).

Accordingly, plaintiff's allegations support a reasonable inference of a causal connection between her protected activity and eventual termination. Therefore, defendant's motion to dismiss plaintiff's retaliation claim under Title VII is denied.

### III.    State Law Claims

Plaintiff also brings claims for retaliation and discrimination pursuant to the NYSHRL and the NYCHRL. Compl. ¶¶ 57–89. Defendant's sole proffered basis for dismissal of these claims is that the Court should decline to exercise supplemental jurisdiction after dismissing plaintiff's federal claims. Mot. 14–15; *see also* Reply 10. As discussed above, the Court concludes that plaintiff plausibly alleges a claim for retaliation pursuant to Title VII. *See* Part II. Accordingly, the Court may exercise supplemental jurisdiction over plaintiff's state law claims, and defendant's motion to dismiss these claims on this basis is denied. *See Makhsudova v. City of New York*, No. 20-cv-10728, 2022 WL 1571152, at *4 (S.D.N.Y. May 18, 2022) ("Because the Court ultimately finds that certain of [the] [p]laintiff's Title VII claims survive [the] [d]efendants' motion to dismiss, the Court will exercise supplemental jurisdiction over [the] [p]laintiff's correlative NYSHRL and NYCHRL claims."); *Atkinson v. Singh*, No. 19-cv-03779, 2022 WL 137634, at *12 n.21 (S.D.N.Y. Jan. 14, 2022) (exercising supplemental jurisdiction over claims brought pursuant to the NYSHRL and NYCHRL where the plaintiff had a "surviving federal claim[] in th[e] action"); *see also Montagno v. City of Burlington*, No. 16-cv-00232, 2017 WL 2399456, at *22 (D. Vt. June 1, 2017) ("[T]he [defendant] moves to dismiss [the] [p]laintiff's state law claims solely on the ground that this court should not exercise supplemental jurisdiction over those claims once [the] [p]laintiff's federal claims have been dismissed. Because the court has determined that several of [the] [p]laintiff's

federal law claims may proceed, the [defendant's] sole ground for dismissal of [the] [p]laintiff's state law claims is now moot.").

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted in part, denied in part. Plaintiff's Title VII discrimination claim is hereby dismissed. The case is respectfully referred to Magistrate Judge Robert M. Levy for pretrial supervision.

**SO ORDERED.**

__/s/ Natasha C. Merle____
NATASHA C. MERLE
United States District Judge

Dated:        December 15, 2025
              Brooklyn, New York