UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NICOLA A. MCFARLANE,

*Plaintiff,*

– against –

COMMUNITY HEALTH CENTER
OF RICHMOND, INC.,

*Defendant.*

---

**MEMORANDUM & ORDER**
25-cv-00410 (NCM) (RML)

**NATASHA C. MERLE**, United States District Judge:

On December 15, 2025, the Court issued an order granting in part and denying in part defendant Community Health Center of Richmond, Inc.'s motion to dismiss. *See* Mem. & Order ("Order"), ECF No. 13. Defendant timely moved for the Court to partially reconsider its decision. *See* Mem. of Law in Supp. of Def.'s Mot. for Partial Reconsideration ("Motion"), ECF No. 20-1. Plaintiff Nicola A. McFarlane filed an opposition. *See* Mem. of Law in Opp'n to Mot. ("Opposition"), ECF No. 20-2. The Court assumes familiarity with the alleged facts and procedural history of this action. *See* Order 1–4.[1] For the reasons stated below, defendant's motion is **DENIED.**

### LEGAL STANDARD

A motion for reconsideration "is an extraordinary request that is granted only in rare circumstances[.]" *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019).[2]

---

[1]   Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[2]   Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

1

The "major grounds" warranting reconsideration of an order include an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). Thus, such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Loc. Civ. R. 6.3. Moreover, the purpose of a motion for reconsideration is not to rehash arguments previously rejected by the Court. *See Brown v. City of New York*, 622 F. App'x 19, 19–20 (2d Cir. 2015) (summary order). A motion for reconsideration can be granted in the event of "manifest error," but not in a case where a party "merely shows that [it] disagrees with th[e] Court's decision." *Garcia v. BAE Cleaners Inc.*, No. 10-cv-07804, 2012 WL 98511, at *1 (S.D.N.Y. Jan 11, 2012); *see also Stewart Park & Rsrv. Coal. Inc. v. Slater*, 374 F. Supp. 2d 243, 254 (N.D.N.Y. 2005) ("[A]ny litigant considering bringing a motion to reconsider based upon [clear error of law or to prevent manifest injustice] should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.").

## DISCUSSION

Defendant seeks reconsideration of the portion of the Order denying defendant's motion to dismiss plaintiff's Title VII retaliation claim. *See* Mot. 8–11. Defendant does not point to an intervening change in controlling law or the availability of new evidence. Instead, defendant argues that the Court committed clear error in permitting the retaliation claim to proceed. Specifically, defendant argues that the Order erred in concluding that plaintiff plausibly alleged the causation element of her retaliation claim.

2

Mot. 8–11. Defendant attacks this conclusion on two primary grounds. First, defendant argues that the Order "overlooked precedent concerning the limited nature of direct evidence." Mot. 8. Second, defendant argues that the Court "misconstrued" the Second Circuit's decision in *Mandell v. County of Suffolk*, 316 F.3d 368 (2d Cir. 2003). Mot. 8. Additionally, defendant argues that "if the Court grants this [M]otion and dismisses the remaining Title VII claim, then the Court should decline to exercise supplemental jurisdiction" over plaintiff's remaining state law claims, and "dismiss the [c]omplaint in its entirety." Mot. 12. The Court addresses each argument in turn.

## I.   Direct Retaliatory Animus

In the Order, the Court concluded that the complaint's allegations supported a reasonable inference "that plaintiff's termination, for 'unprofessional and confrontational behavior towards department supervisors,' was caused by her numerous complaints concerning racial discrimination in the workplace, i.e., retaliatory animus." Order 20 (quoting Compl. ¶ 35, ECF No. 1). Defendant latches on to the Court's observation that plaintiff's allegation concerning her termination letter supported a reasonable inference of retaliatory animus and argues that this conclusion amounts to clear error because "[i]t takes a logical leap for one to speculate" that the statement in plaintiff's termination letter "about unprofessional and confrontational behavior referred in any way to [p]laintiff's alleged . . . protected activity." Mot. 9–10. Defendant further argues that "[t]his speculation is not supported by any facts in the [c]omplaint," and "[t]he fact that it requires speculation or an inference to connect the dots means that it is *not* direct evidence." Mot. 10 (emphasis in original).

This argument plainly fails to warrant reconsideration. At the outset, defendant misconstrues the necessary showing for a Title VII retaliation claim at the pleading stage.

As the Second Circuit has explained, "the burden for establishing a prima facie case of retaliation is de minimis[.]" *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018); *see Farmers v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) ("At the motion to dismiss stage, however, a plaintiff is not required to plead a prima facie case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] to defeat a motion to dismiss. Instead, the facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." (first quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); and then quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). And, of course, a plaintiff need not prove her theory at the pleading stage to defeat a motion to dismiss. *See Sanabria v. Tezlof*, No. 11-cv-06578, 2016 WL 4371750, at *6 (S.D.N.Y. Aug. 12, 2016) ("[A]t the motion to dismiss stage, [p]laintiff need not present evidence in order for h[er] claims to survive.").

Instead, a plaintiff simply must allege facts giving rise to a reasonable inference "that the protected activity was a but-for cause of the retaliation." Order 19 (quoting *Vega*, 801 F.3d at 90–91); *see also Altieri v. Albany Pub. Library*, 172 F. App'x 331, 333 (2d Cir. 2006) (summary order) ("At the pleading stage, we consider only whether the factual predicate that is pleaded includes unlawful discrimination among the realm of plausible possibilities."). And where temporal proximity may be lacking, a plaintiff can support this inference by alleging facts "supporting direct retaliatory animus." *Canady v. Univ. of Rochester Strong Mem'l Med. Ctr.*, No. 21-2150, 2022 WL 17825332, at *2 (2d Cir. Dec. 21, 2022) (summary order). Thus, here, the question is whether plaintiff has alleged facts that support a reasonable inference that defendant's reference to plaintiff's

4

"unprofessional and confrontational" conduct was in fact reference to her protected activity of repeatedly complaining of discrimination to her employer.

As set forth in the Order, the complaint includes such facts here. Plaintiff alleges that she was "known to be hardworking, always on time, and for very rarely missing work." Order 2 (quoting Compl. ¶ 19). Plaintiff alleges that this changed only when she experienced, and complained about, racial discrimination. *See* Order 2. The complaint sets forth a pattern in which plaintiff lodged complaints about racially discriminatory behavior to supervisors, those supervisors failed to take meaningful action, all of which culminated in defendant's termination[3] for, among other things, "unprofessional and confrontational behaviors towards department supervisors." *See* Order 20. Moreover, against this backdrop, plaintiff expressly alleges that the termination letter's reference to

---

[3]    The Court also notes that the Order did not conclude that the sole and exclusive retaliatory action plausibly alleged by plaintiff for purposes of her retaliation claims was her termination. Indeed, plaintiff argued—and the Court recognized—that a "campaign of retaliatory acts" followed plaintiff's protected activity, including unjustified criticism, disciplinary write ups, and negative notes being placed in her file. *See* MTD Opp'n 15, ECF No. 12-4; *see also* Order 11 (explaining that plaintiff's allegations concerning the "pretextual reasons to set plaintiff up for termination . . . certainly bear on plaintiff's retaliation claims"). The Order simply reasoned, for purposes of the motion to dismiss, that plaintiff plausibly alleged a retaliation claim based on her termination. *See* Order 22; *see also Hemans v. Long Island Jewish Med. Ctr.*, No. 10-cv-01158, 2010 WL 4386692, at *7 n.7 (E.D.N.Y. Oct. 28, 2010) ("Defendants argue that other allegations in the complaint regarding other incidents also do not constitute adverse employment actions. . . . [F]or purposes of a motion to dismiss, the Court need not examine whether each of these other incidents would constitute an adverse action, because the alleged suspensions are sufficient to state an adverse employment action that survives a motion to dismiss."); *see also Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 265 (S.D.N.Y. 2006) ("In evaluating an adverse employment action at the motion to dismiss stage, the Second Circuit has recognized that it would be burdensome to have the district court prune a complaint by making a determination with regard to each allegation within a cause of action that is legally cognizable when viewed in its totality. This balancing process and assessment . . . is more appropriately undertaken by the district court at a later stage of the proceedings, namely upon review of motions pursuant to Rule 56 or Rule 50." (quoting *Berheim v Litt*, 79 F.3d 318, 326 (2d Cir. 1996)).

"unspecified unprofessional and confrontational behavior towards department supervisors . . . in actuality refer[red] to the fact that [p]laintiff complained of discrimination and was being retaliated against." Compl. ¶ 35; *see also* Mem. of Law in Supp. of Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss ("MTD Opp'n") 15–16, ECF No. 12-4.

Thus, contrary to defendant's argument, *see* Mot. 9–10, the inference that the statement about unprofessional and confrontational behaviors referred to plaintiff's complaints about discrimination is supported by facts alleged in the complaint. Namely, that plaintiff was an exemplary employee who did not begin experiencing negative feedback at her job until she began complaining to supervisors about racial discrimination. *See* Order 20–21; *cf. Labossiere v. Baxter*, No. 21-cv-10538, 2025 WL 887623, at *8 (S.D.N.Y. Mar. 21, 2025) ("Plaintiff has not alleged that [d]efendant acted with a retaliatory motive in filing the [adverse employment action]."). Moreover, although defendant asserts that no one with "input into [p]laintiff's termination" ever indicated it was linked to her protected activity, Mot. 9, plaintiff alleges that (1) she reported the racial discrimination to defendant's human resources department, "specifically an individual named Williar Hodges," Compl. ¶ 26; (2) she repeatedly followed up with Hodges about her discrimination complaints, Compl. ¶ 30; and (3) defendant "through Williar Hodges, instructed [p]laintiff to stay home in retaliation for reporting racial discrimination" a mere three weeks before plaintiff was terminated, Compl. ¶¶ 34–35. This, at a minimum, supports a plausible link between plaintiff's protected activity and the forced leave which precipitated her termination.

Defendant's argument that plaintiff's "termination for unprofessional and confrontational behavior is not direct evidence of retaliatory animus" because it requires

an inferential step is unavailing. *See* Mot. 9–10. Irrespective of whether "unprofessional and confrontational behavior towards department supervisors" is a "facially neutral statement," Mot. 5, the position advanced by defendant is simply too demanding a standard at the pleading stage. As set forth above, all that is required to survive a motion to dismiss are "allegations plausibly suggesting direct retaliatory animus." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 105 (S.D.N.Y. 2023); *see also Canaday*, 2022 WL 17825332, at *2. Under defendant's view, plaintiff was required not only to plausibly allege direct retaliatory animus, but to supply direct evidence itself.[4] But that is not required under the law to withstand a motion to dismiss. *See Altieri*, 172 F. App'x at 333 ("To survive a motion to dismiss under Rule 12(b)(6), a Title VII complaint need not plead facts sufficient to defeat summary judgment.").

Defendant's cited cases emphasize this point. Tellingly, nearly every case cited in defendant's Motion was decided at the summary judgment stage, when a plaintiff *is*

---

[4]    Indeed, it's unclear what allegations that defendant believes would suffice to show direct retaliatory animus at the pleading stage. Defendant argues that "speculat[ion]" that "unprofessional and confrontational behavior towards department supervisors referred in any way to [p]laintiff's . . . protected activity" is one inferential step too far removed to show retaliatory animus. *See* Mot. 9–10. But as discussed more fully below, that statement must have referenced *some* part of plaintiff's behavior. And, at the motion to dismiss stage, plaintiff is entitled to the reasonable inference that the behavior referenced was her protected activity. Requiring more than those allegations would be too demanding for purposes of a motion to dismiss. *See New Page at 63 Main, LLC v. Inc. Vill. of Sag Harbor*, No. 15-cv-02433, 2016 WL 8653493, at *9 (E.D.N.Y. Mar. 19, 2016) ("As in the Title VII context, the Second Circuit has acknowledged that the ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint. Thus, for the purposes of a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002)); *accord Vega*, 801 F.3d at 86 ("Because discrimination claims implicate an employer's usually unstated intent and state of mind, rarely is there direct, smoking gun, evidence of discrimination. Instead, plaintiffs usually must rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination.").

required to present at least some evidence to support her claims. *See* Mot. 8–10 (citing *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303 (S.D.N.Y. 2020) (summary judgment); *Banks v. Gen. Motors, LLC*, 81 F.4th 242 (2d Cir. 2023) (appeal of summary judgment); *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429 (7th Cir. 2005) (same); *Redd v. N.Y.S. Div. of Parole*, 923 F. Supp. 2d 371 (E.D.N.Y. 2012) (summary judgment)). The lack of authority at the motion to dismiss stage supporting defendant's view is unsurprising given the "de minimis" pleading requirements for Title VII claims. *Duplan*, 888 F.3d at 626; *see also DeVore v. Neighborhood Hous. Servs. of Jamaica, Inc.*, No. 15-cv-06218, 2017 WL 1034787, at *4 (E.D.N.Y. Mar. 16, 2017) ("The pleading requirements in a Title VII action are very lenient, even de minimis.").

Plaintiff's case illustrates this point further. Defendant insists that it "requires an assumption" to connect the statements within plaintiff's termination letter to her protected activity because "there is no allegation that any decisionmaker or anyone with input into [p]laintiff's termination ever made any statement or indication linking" the termination with the protected activity. Mot. 9.[5] But that's the purpose of discovery. By way of illustration, plaintiff may elicit during discovery evidence from one of defendant's decisionmakers that the "unprofessional and confrontational behaviors" statement in plaintiff's termination letter in fact referred to her complaints about discrimination. This would undoubtedly be direct evidence of retaliatory animus to support her retaliation claims. Compl. ¶ 35; *see Richards v. Dep't of Educ. of N.Y.C.*, No. 21-cv-00338, 2022 WL 329226, at *18 (S.D.N.Y. Feb. 2, 2022) ("That [p]laintiff was allegedly disciplined for

---

[5]    The Court notes that this assertion is belied by the complaint, specifically, plaintiff's allegations linking Hodges, an individual to whom plaintiff made complaints of discrimination, with her forced leave of absence immediately precipitating her termination. *See* Compl. ¶¶ 26, 30, 34.

starting a[] . . . complaint [about discrimination] also speaks to direct evidence of retaliatory motive.").

Defendant would have the Court preclude plaintiff from pursuing such evidence to support her allegations simply because she lacks that evidence now. But, as the Court explained in the Order, "the issue on a motion to dismiss is not whether . . . plaintiff will ultimately prevail but instead whether . . . plaintiff is entitled to offer evidence to support [her] claims." Order 5 (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)). And this determination simply turns on whether plaintiff has set forth enough facts to "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the reasons stated in the Order, the Court concludes that plaintiff does so here. *See* Order 18–22; *see also Fierro v. City of New York*, No. 20-cv-09966, 2022 WL 428264, at *9 (S.D.N.Y. Feb. 10, 2022) (concluding on motion to dismiss that the plaintiff plausibly alleged causation between his prior age and disability discrimination lawsuits and the subsequent denial of a promotion where interviewer referenced the plaintiff's "history at [prior employer]" in denying position, and explaining that "the interviewer's reference to [the] [p]laintiff's history at [prior employer] could refer to the lawsuits alleging age and disability discrimination that he filed while working at [the prior employer][;] [t]hat reference is sufficient to plead direct animus"); *see also Duplan*, 888 F.3d at 626 ("Because the burden for establishing a prima facie case of retaliation is de minimis, we conclude that [the plaintiff's] allegations are sufficient to survive th[e] [motion to dismiss] stage. The district court, of course, remains free to re-assess the viability of these claims after discovery on a motion for summary judgment.").

At bottom, defendant's contention that inferring that "unprofessional and confrontational behaviors towards department supervisors" referred to plaintiff's complaints about discrimination is "speculative," *see* Mot. 9–10, is refuted by the allegations in the complaint. The "behaviors" referenced in the termination letter must have referred to some part of plaintiff's conduct. *See* Compl. ¶ 35. And based on the facts alleged, which the Court must accept as true, it is reasonable to infer that the conduct alluded to included plaintiff's complaints about discrimination. *See* Compl. ¶ 35 ("[T]he letter stated that [p]laintiff engaged in unspecified unprofessional and confrontational behavior towards department supervisors, which is incorrect and in actuality refers to the fact that [p]laintiff complained of discrimination and was being retaliated against."). Indeed, the complaint alleges that the termination letter discussed plaintiff's unspecified behavior "towards department supervisors," as a reason for her termination. Compl. ¶ 35. Among the interactions between plaintiff and her supervisors catalogued by the complaint, a substantial portion pertain to plaintiff's complaints about racial discrimination in the workplace. *See* Compl. ¶¶ 23, 25–26, 30. Although defendant attempts to characterize the termination letter's language as "facially neutral," Mot. 5, defendant in essence asks the Court to speculate that the "behaviors" mentioned in the letter referred to something unrelated to plaintiff's protected activity, an inference defendant is not entitled to at this stage.[6] *See DePace v. Flaherty*, 183 F. Supp. 2d 633,

---

[6]    Once again, defendant's cited cases underscore this point. Defendant cites to a string of cases which it argues demonstrate that "unprofessional and confrontational behavior is a legitimate, non-retaliatory (and nondiscriminatory) reason for terminating an employee." Mot. 11 n.4. But each of defendant's cited cases were decided at the summary judgment stage, where a court must consider evidence in the record bearing on whether a non-retaliatory reason for an employee's termination has been established. *See* Mot. 11 n.4 (citing *Farmer v. Patino*, No. 18-cv-01435, 2020 WL 5342592, at *7 (E.D.N.Y.

637–38 (S.D.N.Y. 2002) ("[T]h[e] Court cannot draw an inference against the nonmovant on a motion to dismiss.").

Defendant may disagree with the Order's analysis and conclusion, but that disagreement does not amount to clear error, nor warrants granting the "extraordinary request" of a motion for reconsideration. *Van Buskirk*, 935 F.3d at 54; *see Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 n.16 (S.D.N.Y. 2011) ("Mere disagreement with an opinion, however, is not a basis for reconsideration."); *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009) ("A party's fundamental disagreement with a court's legal analysis and conclusions as to a matter fully considered does not serve as sufficient ground to warrant reconsideration of the court's decision."); *Abdallah v. LexisNexis Risk Sols. FL Inc.*, No. 19-cv-03609, 2021 WL 6197060, at *8 (E.D.N.Y. Dec. 30, 2021) ("While [p]laintiff may disagree with the Court's analysis, a mere disagreement with the court's legal determination is not a valid basis for reconsideration.").

Accordingly, defendant's motion for reconsideration on the grounds that the Court erred in finding that the allegations supported a reasonable inference of direct retaliatory animus is denied.

## II.    *Mandell*

Defendant also argues that reconsideration is warranted because the Order relied on, and misconstrued, the Second Circuit's decision in *Mandell v. Cnty. of Suffolk*, 316

---

Sept. 4, 2020) (granting motion for summary judgment in part based on "replete . . . examples" in the record about plaintiff's "unprofessional behavior and poor work performance"); citing *Enyia v. N.Y.C. Health & Hosps. Corp.*, No. 16-cv-06344, 2019 WL 5308896, at *8, 10 (S.D.N.Y. Oct. 18, 2019) (same); and then citing *Gill v. Mount Sinai Hosp.*, 160 F. App'x 43, 44 (2d Cir. 2005) (summary order) (affirming district court's grant of summary judgment because the plaintiff failed to "provide[] . . . evidence" in support of prima facie case or to rebut the defendant's evidence that the plaintiff was terminated because of lack of interpersonal skills and confrontational attitude)).

F.3d 368 (2d Cir. 2003). *See* Mot. 5, 8. In *Mandell*, the Second Circuit affirmed in part and vacated in part the district court's award of summary judgment to the defendants in a Title VII employment discrimination case. *Mandell*, 316 F.3d at 377. The plaintiff there alleged that he was retaliated against by Suffolk County's police department in part due to his public criticism of the department's anti-Semitism. *See id.* at 374–75. The plaintiff was promoted from lieutenant to captain the year following his public comments. *Id.* at 375. As part of the promotion procedure, the plaintiff's then-supervisor provided an evaluation that was placed in the plaintiff's personnel file stating: "[w]hile I do not consider that the attitude projected by [the] plaintiff should necessarily affect [the] plaintiff's suitability for promotion to captain, *I do feel that his attitude should be taken into account when placing him in any future assignment.*" *Id.* (emphasis in original).

On appeal, the Second Circuit rejected the defendants' argument that the plaintiff failed to establish a causal connection for purposes of his Title VII retaliation claim. Specifically, the court concluded that the plaintiff "adduced sufficient direct evidence of retaliatory animus to create a triable question of fact on th[e] issue." *Id.* The court then cited "[s]everal reasons" which led to the result, one of which included the comment in the plaintiff's personnel file concerning plaintiff's attitude. *See id.*

In the Order, the Court cited *Mandell*, among other cases, in support of its conclusion that the complaint's allegations supported a reasonable inference of retaliatory animus. *See* Order 20. Defendant argues that this was error because, in its view, "*Mandell* does not support the conclusion that the [termination letter's] facially neutral statement about unprofessional and confrontational behavior is direct evidence of retaliatory animus." Mot. 11. Defendant also goes to great lengths to argue that *Mandell*

"is distinguishable on its face from the allegations in the [c]omplaint." Mot. 5; *see also* Mot. 10–11.

Reconsideration is not warranted on this ground for the simple reason that the Court did not rely on *Mandell* for anything more than the unremarkable propositions that (1) retaliatory animus can be shown by complaints from an employer in response to a plaintiff's complaints about discrimination; and (2) an inference of causation is not defeated by a lengthy temporal gap where there are plausible allegations of direct retaliatory animus. *See* Order 20–21. Indeed, the Order cites *Mandell* a mere two times, and in each instance among other persuasive authority—which defendant conveniently disregards here—supporting both propositions. *See* Order 20–21.

Moreover, defendant's arguments concerning its interpretation of *Mandell* are without merit because defendant does not, and indeed, cannot, argue that its interpretation mandates a different outcome. *See generally* Mot. To be sure, defendant argues that *Mandell* is distinguishable from the instant case on several fronts, *see* Mot. 10–11, but at most this amounts to a disagreement about the persuasiveness of *Mandell*, not a tenable argument that the Court "overlooked controlling or persuasive authority." *Faulkner v. Nat'l Geographic Soc.*, 296 F. Supp. 2d 488, 490 (S.D.N.Y. 2003). In other words, defendant "simply disagrees" with the Court's analysis, which is not a valid basis for reconsideration. *Id.*; *see also Alzamora v. Village of Chester*, 534 F. Supp. 2d 436, 439 (S.D.N.Y. 2008) ("The movant's disagreement with the court's interpretation of precedent is not a proper ground for reconsideration."); *Lolonga-Gedeon v. Child & Fam. Servs.*, 144 F. Supp. 3d 438, 441 (W.D.N.Y. 2015) ("Defendant's disagreement with the Court's reading [of a case] is not a basis for reconsideration.").

Accordingly, defendant's motion for reconsideration based on its interpretation of *Mandell* is denied.

### III.    Supplemental Jurisdiction

Defendant requests that the Court grant the Motion, "dismiss[] the remaining Title VII claim, [and] . . . decline to exercise supplemental jurisdiction and . . . dismiss the [c]omplaint in its entirety." Mot. 12. Because the Court denies the Motion and declines to dismiss plaintiff's Title VII claim, the Court continues to exercise supplemental jurisdiction over plaintiff's state law claims.

**CONCLUSION**

For the reasons stated above, defendant's motion for reconsideration is **DENIED**.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　 _/s/ Natasha C. Merle_
　　　　　　　　　　　　　　　　　　　　　 NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　　　 United States District Judge

Dated:　　　 April 17, 2026
　　　　　　 Brooklyn, New York

14
